1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

4

Mar 29, 2021

SEAN F. McAVOY, CLERK

5        **UNITED STATES DISTRICT COURT**

6        **EASTERN DISTRICT OF WASHINGTON**

7    ERIN H.,[1]

             Plaintiff,                      No. 2:20-cv-00191-MKD

8                                            ORDER DENYING PLAINTIFF'S
         vs.                                 MOTION FOR SUMMARY
9                                            JUDGMENT AND GRANTING
     ANDREW M. SAUL,                         DEFENDANT'S MOTION FOR
10   COMMISSIONER OF SOCIAL                  SUMMARY JUDGMENT
     SECURITY,
11                                           ECF Nos. 19, 20
             Defendant.

12

13        Before the Court are the parties' cross-motions for summary judgment.  ECF

14   Nos. 19, 20.  The parties consented to proceed before a magistrate judge.  ECF No.

15   8.  The Court, having reviewed the administrative record and the parties' briefing,

16

17   _____

18   [1] To protect the privacy of plaintiffs in social security cases, the undersigned

19   identifies them by only their first names and the initial of their last names.  *See*

20   LCivR 5.2(c).

ORDER - 1

is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

motion, ECF No. 19, and grants Defendant's motion, ECF No. 20.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

ORDER - 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

ORDER - 4

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

ORDER - 5

education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  *Id.*

   The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

*Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

   On September 12, 2017, Plaintiff applied both for Title II disability

insurance benefits and Title XVI supplemental security income benefits alleging a

disability onset date of June 25, 2017.[2]  Tr. 15, 152, 287-302.  The applications

---

[2] Plaintiff previously applied for benefits, first on April 1, 2008, which resulted in

an ALJ rendering a partially favorable decision on November 25, 2009; Plaintiff

was found disabled during a closed period of January 12, 2008 through April 1,

ORDER - 6

were denied initially and on reconsideration.  Tr. 206-09, 218-23.  Plaintiff

appeared before an administrative law judge (ALJ) on January 11, 2019.  Tr. 46-

104.  On February 15, 2019, the ALJ denied Plaintiff's claim.  Tr. 12-33.

At step one of the sequential evaluation process, the ALJ found Plaintiff,

who met the insured status requirements through December 31, 2022, has not

engaged in substantial gainful activity since June 25, 2017.  Tr. 17.  At step two,

the ALJ found that Plaintiff has the following severe impairments: myopia, post-

traumatic arthritis of the left shoulder, and cervical and lumbar degenerative disc

disease.  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  Tr. 19.  The ALJ then concluded that Plaintiff has the RFC to perform

light work with the following limitations:

> [Plaintiff] cannot climb ladders, ropes, or scaffolds; she can frequently
> balance, and occasionally perform all other postural activities; with

---

2009.  Tr. 106-24.  Plaintiff again applied for benefits on April 9, 2010, which

resulted in an ALJ rendering a fully favorable decision on January 27, 2012;

Plaintiff was found disabled during a closed period of November 26, 2009 through

June 30, 2011.  Tr. 125-35.  Plaintiff returned to full-time work beginning July 1,

2011.  Tr. 134.

the left upper extremity, she can frequently push and pull, and occasionally reach overhead; with the right upper extremity, she has unlimited ability to push and pull, and can frequently reach overhead; she can frequent[ly] handle bilaterally; she can frequently operate foot controls; she cannot perform tasks that require precise visual acuity, such as threading a needle or reading print smaller than regular newspaper print; and she can have no exposure to vibration, extreme cold, or hazards, such as unprotected heights and moving mechanical parts.

Tr. 20.

At step four, the ALJ found Plaintiff is unable to perform any of her past relevant work. Tr. 25. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as usher, photocopy machine operator, and mail clerk. Tr. 26. In the alternative, the ALJ found that if Plaintiff was limited to sedentary work with additional limitations, there were still jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as document preparer, food and beverage order clerk, and addresser. Tr. 27. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of June 25, 2017, through the date of the decision. *Id.*

On March 31, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

2.  Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 19 at 16.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims. ECF No. 19 at 17-18. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).

ORDER - 9

1  "The claimant is not required to show that [the claimant's] impairment could

2  reasonably be expected to cause the severity of the symptom [the claimant] has

3  alleged; [the claimant] need only show that it could reasonably have caused some

4  degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

5  Second, "[i]f the claimant meets the first test and there is no evidence of

6  malingering, the ALJ can only reject the claimant's testimony about the severity of

7  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

8  rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

9  omitted).  General findings are insufficient; rather, the ALJ must identify what

10  symptom claims are being discounted and what evidence undermines these claims.

11  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.*

12  *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

13  explain why it discounted claimant's symptom claims)).  "The clear and

14  convincing [evidence] standard is the most demanding required in Social Security

15  cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

16  *Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

17  Factors to be considered in evaluating the intensity, persistence, and limiting

18  effects of a claimant's symptoms include: 1) daily activities; 2) the location,

19  duration, frequency, and intensity of pain or other symptoms; 3) factors that

20  precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

ORDER - 10

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in

an individual's record," to "determine how symptoms limit ability to perform

work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of her

symptoms were not entirely consistent with the evidence.  Tr. 21.

In her opening brief, Plaintiff challenged only the ALJ's conclusion that

Plaintiff's activities of daily living were inconsistent with Plaintiff's symptom

complaints.  ECF No. 19 at 17-18.  Plaintiff challenged the additional reasons in

her reply brief, ECF No. 21 at 2-8.  As Plaintiff failed to raise the challenges in the

opening brief to the four other reasons the ALJ cited in support of his finding that

Plaintiff's symptom complaints were not entirely credible, any challenges are

waived and the Court may decline to review them.  *See Carmickle v. Comm'r, Soc.*

*Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).  However, upon review, the Court finds that the ALJ provided specific, clear, and convincing reasons, supported by substantial evidence, to support his finding.  Tr.  21-23.

### 1.  Inconsistent Statements

The ALJ found Plaintiff made inconsistent statements about her symptoms and limitations.  Tr. 21-22.  In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

The ALJ noted that while Plaintiff alleges an inability to work since June 25, 2017, she told her treating physician in August 2017 that she was employed as a nursing assistant, which required moderate physical activity, and she was satisfied with the work.  Tr. 21-22 (citing Tr. 464, 614).  However, Plaintiff's work as nursing assistant appears under "social history", Tr. 614, and "work history," Tr. 464, and Plaintiff's earnings record indicates Plaintiff had earnings in the first and second quarters of 2017, and there are no earnings in the third quarter of 2017, which is consistent with Plaintiff's reports that her work ended in June 2017, Tr.

ORDER - 12

310.  The ALJ's finding that Plaintiff gave inconsistent statements about her work is not supported by substantial evidence.  However, any error is harmless as the ALJ gave other supported reasons to reject Plaintiff's symptom claims.  *See Molina,* 674 F.3d at 1115.

The ALJ also found Plaintiff's allegation that she had been having four seizures per month since mid-2016 was inconsistent with her testimony that she continued driving until September 2017, and her report to a provider that she was still driving in January 2018.  Tr. 22 (citing Tr. 593).  Plaintiff testified at the hearing that she stopped driving "maybe" in October 2017, Tr. 86, but also reported in January 2018 to a provider that she is able to drive during the day but not after the sun goes down because of her seizures, and she reported she does not drive far because she tends to get tired, Tr. 593.  On this record, the ALJ reasonably concluded that Plaintiff made inconsistent statements about her ability to drive.  This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.

## 2. Inconsistent Objective Evidence

The ALJ found the objective medical evidence is inconsistent with Plaintiff's symptom claims.  Tr. 22.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261

ORDER - 13

1  F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

2  1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400

3  F.3d 676, 680 (9th Cir. 2005).  However, the objective medical evidence is a

4  relevant factor, along with the medical source's information about the claimant's

5  pain or other symptoms, in determining the severity of a claimant's symptoms and

6  their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2),

7  416.929(c)(2).

8         The ALJ found the objective evidence does not support Plaintiff's allegation

9  that she has three to five seizures per month. Tr. 22.  Plaintiff's MRIs and EEGs

10 were consistently within normal limits, with no evidence of seizure activity.  *Id.*

11 (citing Tr. 462, 612).  Plaintiff had mild diffuse slowing on one occasion but had

12 no epileptiform abnormalities.  Tr. 22 (citing Tr. 612, 616).  On another occasion,

13 Plaintiff reported having a five-minute seizure, but Dr. Cairns observed Plaintiff

14 appeared alert and did not appear significantly postical.  Tr. 22 (citing Tr. 678).

15        While the ALJ found the objective evidence does not support Plaintiff's

16 allegations of four seizures per month due to epilepsy, the ALJ noted that Dr.

17 Sparrow suspected Plaintiff's events were not epileptic in nature.  Tr. 22 (citing Tr.

18 615).  Dr. Johnson also found Plaintiff's visual fields impairment had a non-

19 physiological cause.  Tr. 22 (citing Tr. 675).  Dr. McKenna testified that there was

20 not evidence to support a diagnosis of a seizure disorder and noted Plaintiff's

ORDER - 14

providers thought her seizures may be psychogenic.  Tr. 65.  However, the ALJ

noted that Plaintiff did not follow-up with the extended EEG that was

recommended to determine if the seizures were epileptic or psychogenic, and

Plaintiff did not seek mental health treatment.  Tr. 22-23.  As such, there is not

objective evidence to support disabling limitations due to psychogenic seizures.

On this record, the ALJ reasonably concluded that the objective medical evidence

is not consistent with Plaintiff's complaints of disabling symptoms.  This finding is

supported by substantial evidence and was a clear and convincing reason to

discount Plaintiff's symptom claims.

### 3.  Lack of Treatment

The ALJ found Plaintiff's lack of treatment is inconsistent with her symptom

claims.  Tr. 22.  An unexplained, or inadequately explained, failure to seek

treatment or follow a prescribed course of treatment may be considered when

evaluating the claimant's subjective symptoms.  *Orn v. Astrue*, 495 F.3d 625, 638

(9th Cir. 2007).  And evidence of a claimant's self-limitation and lack of

motivation to seek treatment are appropriate considerations in determining the

credibility of a claimant's subjective symptom reports.  *Osenbrock v. Apfel*, 240

F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 F. App'x 45, *3 (9th

Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking

treatment).  When there is no evidence suggesting that the failure to seek or

ORDER - 15

1  participate in treatment is attributable to a mental impairment rather than a

2  personal preference, it is reasonable for the ALJ to conclude that the level or

3  frequency of treatment is inconsistent with the alleged severity of complaints.

4  *Molina*, 674 F.3d at 1113-14.  But when the evidence suggests lack of mental

5  health treatment is partly due to a claimant's mental health condition, it may be

6  inappropriate to consider a claimant's lack of mental health treatment when

7  evaluating the claimant's failure to participate in treatment.  *Nguyen v. Chater*, 100

8  F.3d 1462, 1465 (9th Cir. 1996).

9          At her February 2019 hearing, Plaintiff testified she had not sought

10  treatment for her seizures since February 2018 and had not sought any other

11  medical treatment since May 2018.  Tr. 22, 51.  Although an extended EEG was

12  recommended, Plaintiff did not have the EEG performed and she could not explain

13  why, though she stated she guessed the EEG request was probably declined by her

14  insurance, but she did not know if the insurance denial was appealed.  Tr. 23, 67-

15  68.  Plaintiff testified she could not get additional neurological treatment covered

16  until she obtained the EEG.  Tr. 68.  Plaintiff argues she did not have any gaps in

17  her treatment but does not explain why there are no medical records from May

18  2018 through the February 2019 hearing.  ECF No. 21 at 3-4.  Plaintiff also has not

19  sought mental health treatment, despite her providers indicating her symptoms may

20  be due to psychogenic causes.  Tr. 22, 98-99.  Plaintiff testified she has never been

ORDER - 16

told to seek mental health treatment and she does not feel she needs it.  Tr. 98-99.

The ALJ's finding that Plaintiff's lack of treatment is inconsistent with her

allegation of disabling seizures is a clear and convincing reason, supported by

substantial evidence, to reject Plaintiff's symptom claims.

### 4. Symptom Exaggeration

The ALJ found Plaintiff exaggerated her symptoms.  Tr. 22.  Evidence of

being motivated by secondary gain is sufficient to support an ALJ's rejection of

testimony evidence.  *See Matney*, 981 F.2d at 1020. Therefore, the tendency to

exaggerate or engage in manipulative conduct during the process is a permissible

reason to discount the credibility of the claimant's reported symptoms.

*Tonapetyan*, 242 F.3d at 1148.

The ALJ noted the medical records contained evidence of symptom

magnification and a focus on secondary gain.  Tr. 22 (citing Tr. 590, 600, 615).

During her psychological consultative examination, the examiner observed

Plaintiff was less helpless appearing in the waiting room than she was during her

examination, and Plaintiff then became annoyed and upset during the examination.

Tr. 590.  During her physical consultative examination, Plaintiff exhibited poor

effort on the range of motion testing, exhibited exaggerated pain behavior

throughout the examination, and the examiner noted multiple inconsistencies in

Plaintiff's behavior including her ability to put on her jacket without difficulty and

ORDER - 17

with improved shoulder range of motion despite Plaintiff having restricted range of motion on examination.  Tr. 600.  The examiner noted Plaintiff gave poor effort on her examination.  Tr. 601.  When seeking treatment for her seizures, Plaintiff and her mother reported she was applying for disability benefits and needed to obtain the treatment records for Plaintiff's application for benefits.  Tr. 615.  This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

### 5.  Activities of Daily Living

The ALJ found Plaintiff's activities of daily living were inconsistent with her symptom claims.  Tr. 22.  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.

ORDER - 18

1    The ALJ noted Plaintiff reported she was able to independently perform

2    basic housework, laundry, meal preparation, animal care, shopping, and financial

3    management.  Tr. 22 (citing Tr. 369-76).  However, Plaintiff reported receiving

4    assistance from her family members for many of the activities and reported

5    significant difficulties with the activities.  Tr. 369-76.  However, any error is

6    harmless as the ALJ gave other supported reasons to reject Plaintiff's symptom

7    claims.  *See Molina,* 674 F.3d at 1115.  Plaintiff is not entitled to remand on these

8    grounds.

9    **B. Medical Opinion Evidence**

10    Plaintiff contends the ALJ erred in his analysis of the opinions of Michael

11    Clark, M.D.  ECF No. 19 at 18-20.  As an initial matter, for claims filed on or after

12    March 27, 2017, new regulations apply that change the framework for how an ALJ

13    must evaluate medical opinion evidence.  *Revisions to Rules Regarding the*

14    *Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18,

15    2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the

16    ALJ will no longer "give any specific evidentiary weight…to any medical

17    opinion(s)…"  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-

18    68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider

19    and evaluate the persuasiveness of all medical opinions or prior administrative

20    medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a) and (b),

ORDER - 19

416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical

opinions and prior administrative medical findings include supportability,

consistency, relationship with the claimant (including length of the treatment,

frequency of examinations, purpose of the treatment, extent of the treatment, and

the existence of an examination), specialization, and "other factors that tend to

support or contradict a medical opinion or prior administrative medical finding"

(including, but not limited to, "evidence showing a medical source has familiarity

with the other evidence in the claim or an understanding of our disability

program's policies and evidentiary requirements").  20 C.F.R. §§ 404.1520c(c)(1)-

(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore

the ALJ is required to explain how both factors were considered.  20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).  Supportability and consistency are explained in

the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence
> and supporting explanations presented by a medical source are to
> support his or her medical opinion(s) or prior administrative medical
> finding(s), the more persuasive the medical opinions or prior
> administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior
> administrative medical finding(s) is with the evidence from other
> medical sources and nonmedical sources in the claim, the more
> persuasive the medical opinion(s) or prior administrative medical
> finding(s) will be.

ORDER - 20

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not

required to, explain how the other factors were considered.  20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).[3]  However, when two or more medical opinions

––––––––––––––––––––––

[3] The parties disagree over whether Ninth Circuit case law continues to be

controlling in light of the amended regulations. ECF No. 19 at 17-20; ECF No. 20

at 13-18.  Plaintiff cited exclusively to case law that applied the prior regulations,

ECF No. 19 at 17-20, and argues the change in the regulations does not overrule

prior case law, ECF No. 21 at 9, while Defendant argues the prior case law does

not apply to the new regulations, ECF No. 20 at 13-18.  The Court finds resolution

of this question unnecessary to the disposition of this case.  "It remains to be seen

whether the new regulations will meaningfully change how the Ninth Circuit

determines the adequacy of the an ALJ's reasoning and whether the Ninth Circuit

will continue to require that an ALJ provide 'clear and convincing' or 'specific and

legitimate reasons' in the analysis of medical opinions, or some variation of those

standards." *Allen T. v. Saul*, No. EDCV 19-1066-KS, 2020 WL 3510871, at *3

(C.D. Cal. June 29, 2020) (citing *Patricia F. v. Saul*, No. C19-5590-MAT, 2020

WL 1812233, at *3 (W.D. Wash. Apr. 9, 2020)). "Nevertheless, the Court is

mindful that it must defer to the new regulations, even where they conflict with

prior judicial precedent, unless the prior judicial construction follows from the

1  or prior administrative findings "about the same issue are both equally well-

2  supported ... and consistent with the record ... but are not exactly the same," the

3  ALJ is required to explain how "the other most persuasive factors in paragraphs

4  (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3),

5  416.920c(b)(3).

6        On January 14, 2018, Dr. Clark examined Plaintiff and rendered an opinion

7  on Plaintiff's psychological functioning.  Tr. 590-96.  Dr. Clark diagnosed Plaintiff

8  with unspecified depressive disorder, unspecified anxiety disorder, and possible

9  unspecified cluster C personality disorder.  Tr. 595.  Dr. Clark opined Plaintiff is

10  able to manage her own funds, but she would appear to have some difficulties

11  performing simple/repetitive tasks; he has significant doubts about Plaintiff's

12  ability to perform detailed and complicated tasks; Plaintiff would probably have

13  difficulty accepting instructions from supervisors; she would probably have

14  _____

15  unambiguous terms of the statute and thus leaves no room for agency discretion.'"

16  *Allen T.,* at *3 (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet*

17  *Services*, 545 U.S. 967, 981-82 (2005);  *Schisler v. Sullivan*, 3 F.3d 563, 567-58

18  (2d Cir. 1993) ("New regulations at variance with prior judicial precedents are

19  upheld unless 'they exceeded the Secretary's authority [or] are arbitrary and

20  capricious.'").

ORDER - 22

1  significant difficulty interacting with coworkers and the public; she would not have

2  difficulty performing work activities without special/additional instructions, but

3  she would probably have difficulty maintaining regular attendance and completing

4  a normal workday/workweek without interruptions from a psychiatric condition;

5  she would likely have difficulty dealing with the usual stress in the workplace; and

6  her symptoms/limitations are unlikely to dissipate within 12 months.  Tr. 595-96.

7  The ALJ found Dr. Clark's opinion was not persuasive.  Tr. 25.

8       First, the ALJ found Dr. Clark's opinion was inconsistent with Plaintiff's

9  presentation, behavior, and examination results.  Tr. 25.  Supportability is one of

10  the most important factors an ALJ must consider when determining how

11  persuasive a medical opinion is.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

12  The more relevant objective evidence and supporting explanations that support a

13  medical opinion, the more persuasive the medical opinion is.  20 C.F.R. §§

14  404.1520c(c)(1), 416.920c(c)(1).

15       The ALJ found Plaintiff's behavior during Dr. Clark's examination was

16  uncooperative, Tr. 25, and noted the examination contained evidence of symptom

17  magnification, Tr. 22.  Dr. Clark observed that Plaintiff had appropriate behavior

18  in the waiting room, and appeared less helpless in the waiting room, but began to

19  behave in a helpless manner in the initial portion of the interview before becoming

20  upset.  Tr. 590.  On examination, Dr. Clark noted Plaintiff was tangential, agitated,

ORDER - 23

1  defensive, helpless, hopeless, alert, and oriented.  Tr. 593-94.  Plaintiff had normal

2  memory, fund of knowledge, and level of intelligence, and she made only one error

3  on serial sevens but then became upset by the error and while still upset made an

4  error while following a three-step command.  *Id.*  Plaintiff had normal judgment

5  but did not appear to have much insight into her own difficulties.  *Id.*  While

6  Plaintiff had some abnormalities on examination, Dr. Clark did not address how

7  Plaintiff's potential symptom magnification impacted his opinion, despite noting

8  her different behavior in the waiting room versus the examination room.  As

9  discussed *infra,* Plaintiff generally presented at her treatment appointments with

10  normal mood, affect, behavior and without complaints of psychological symptoms,

11  and such presentation is inconsistent with her presentation at Dr. Clark's

12  examination.  As such, the ALJ's finding that Dr. Clark's opinion is inconsistent

13  with Plaintiff's presentation, behavior, and examination results was a specific and

14  legitimate reason, supported by substantial evidence, to reject the opinion.  *See*

15  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson*

16  *v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003); *Thomas*, 278

17  F.3d at 957; *Tonapetyan*, 242 F.3d at 1149; *Matney*, 981 F.2d at 1019.

18        Second, the ALJ found Dr. Clark's opinion was inconsistent with the

19  longitudinal record.  Tr. 25.  Consistency is one of the most important factors an

20  ALJ must consider when determining how persuasive a medical opinion is.  20

ORDER - 24

1   C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The more consistent an opinion is

2   with the evidence from other sources, the more persuasive the opinion is.  20

3   C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The ALJ noted treating sources

4   generally found Plaintiff had no cognitive deficits, was pleasant, had a normal

5   mood and affect, and was in no acute distress.  Tr. 25.  As indicated by the ALJ,

6   the treatment records generally reflect normal psychological functioning, including

7   normal mood, affect, memory, orientation, behavior, concentration, attention, fund

8   of knowledge, speech, comprehension, insight, and judgment.  Tr. 426, 465, 500,

9   608, 614, 619.  While Dr. Clark noted Plaintiff was tangential and difficult to get a

10  history from, Tr. 592, treatment records indicate Plaintiff has an intact memory and

11  is able to give a detailed history with goal-directed answers, Tr. 505, 510, 520,

12  525, 534, 539.  Plaintiff also has not sought any mental health treatment and

13  testified that she does not feel she needs mental health treatment.  Tr. 99.  The

14  ALJ's finding that Dr. Clark's opinion is inconsistent with the longitudinal record

15  was a specific and legitimate reason, supported by substantial evidence to reject the

16  opinion.  *See Batson,* 359 F.3d at 1195.

17      Third, the ALJ found that the inclusion of additional mental limitations in

18  the RFC would not be disabling.  Tr. 25.  Any error in failing to include a

19  provider's opined limitation would be harmless "where it is inconsequential to the

20  [ALJ's] ultimate nondisability determination."  *See Molina*, 674 F.3d at 1115.  The

ORDER - 25

ALJ posed a second hypothetical to the vocational expert that contained additional

limitations, and the vocational expert testified there would still be available jobs

that exist in significant numbers.  Tr. 25.  The hypothetical included the following

limitations: "sedentary work . . . simple, routine tasks, with a reasoning level of 2

or less; superficial contact with the public; occasional contact with coworkers; and

could not have concentrated pulmonary irritants or wetness."  Tr. 101.

The ALJ reasonably interpreted Dr. Clark's opinion as being accounted for

by a limitation to simple, routine tasks, a reasoning level of two, and social

limitations.  Dr. Clark opined Plaintiff appears to have "some" difficulties with

simple and repetitive tasks, and would have difficulties with detailed tasks, which

was accounted for in the hypothetical.  Tr. 101, 596.  He opined Plaintiff would

have difficulties with supervisors and would probably have difficulties with

coworkers and the public, which the ALJ accounted for in the hypothetical with

limitations to superficial public contact and occasional coworker contact.  Tr. 101,

596.  As such, any error in rejecting most of Dr. Clark's opinion would be

harmless, as the opined limitations were not disabling.  Dr. Clark also opined

Plaintiff would "probably" have difficulty maintaining regular attendance and

completing a normal workday/workweek but did not specify the amount of time

Plaintiff would miss work or be off task.  Tr. 596.  Even if the attendance portion

of the opinion was disabling, the ALJ gave two reasons, supported by substantial

evidence, why he found Dr. Clark's opinion was not persuasive; as such, any error in finding Dr. Clark's opinion was not disabling is harmless.

Plaintiff argues the ALJ erred in rejecting Dr. Clark's opinion, because the testifying medical expert opined Plaintiff's seizures are not epileptic and noted that providers believed Plaintiff's seizures may be psychogenic. ECF No. 19 at 19-20. Plaintiff contends that if Plaintiff's seizures are psychogenic, the ALJ erred in rejecting Dr. Clark's opinion. *Id.* However, Dr. Clark only noted that Plaintiff complained of seizures which he interpreted "to mean pseudoseizures given what little history I was provided," Tr. 590, and Dr. Clark did not diagnose Plaintiff with somatoform disorder or any other condition to account for pseudoseizures, Tr. 595. Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED March 29, 2021.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 28